IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **LESLIE GREER** § | |
| **Plaintiff** § | |
| § | Civil Action No:4:11 cv 135 |
| v. § | |
| § | Complaint for Accommodation |
| **FIFTH AVENUE FRISCO TEXAS** § | Discrimination Under the A.D.A. |
| **GRUBER PROPERTY LLC, JOHN** § | |
| **GRUBER and NEBRASKA BOOK** § | |
| **COMPANY, INC. d/b/a PJ's** § | |
| **Textbooks** | |
| **Defendants** | |

## *ORIGINAL COMPLAINT*
### INTRODUCTION

1.      Plaintiff is an individual with a disability.  Plaintiff brings this action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Tex. Hum. Res. Code § 121.001 *et seq.*   This Complaint seeks redress for past and continuing discrimination against persons with disabilities.  This discrimination is occurring at the shopping center where, among other things, the PJ's Textbooks is located in Allen, Texas.  The center and the store are owned and or operated by the Defendants.

2.      Plaintiff seeks to enjoin the Defendants from maintaining and to require that the Defendants remove the architectural barriers that interfere with Plaintiff's right to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Defendants at the shopping center and the restaurant.

3.      Plaintiff also seeks a permanent injunction to prevent the Defendants from engaging in these unlawful practices, as well as declaratory relief and attorney's fees and costs of litigation.

## JURISDICTION

4. This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331 and 42 U.S.C. §12188 and supplemental jurisdiction over the state claims. under 28 U.S.C. §1367.

## PARTIES

5. Plaintiff Leslie Greer ("Ms. Greer") is an individual with a disability within the meaning of the ADA Sec. 3(2)(A), 42 U.S.C. 12102(2)(A) ), and a "Person with a disability" as defined by Tex. Hum. Res. Code § 121.002(4). She is unable to walk as the result of a spinal cord injury and must use a wheelchair for mobility.

6. The property is a mixed use shopping center that has a dry cleaners along with the PJ's Textbook store. The Property is located generally on Preston road across the street from the Frisco branch of Collin County Community College. The real property is described in Collin County property records as FIFTH AVENUE CLEANERS (CFR), BLK A, LOT 1, 1.237 ACRES. (referred to together herein as the "Property" or the "Center"). The Property has a total value listed in the Collin County Appraisal District of more than $2,3000,000.00.

7. Defendant, FIFTH AVENUE FRISCO TEXAS GRUBER PROPERTY LLC, (Fifth Avenue) is a Texas limited liability corporation based out of California. Records indicate that it owns the Property. The manager of this entity is defendant John Gruber who resides in California as well. Together, herein, they are referred to as the "Landlord". The agent for service of process for both Mr. Gruber and FIFTH AVENUE FRISCO TEXAS GRUBER PROPERTY LLC is Paracorp Incorporated, 3610-2, North Josey Lane, Carrolton, Texas 75007.

*PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL*
Page 2 of 14

8.     Defendant NEBRASKA BOOK COMPANY, INC. d/b/a PJ's Textbooks is a Missouri company doing business in Texas.  It owns PJ's Textbooks located at the Property.  It is herein referred to as the "Tenant".  The agent for service of process for it is Corporations Service Company 211 East 7th Street, Austin, Texas 78701.

9.     Under the law, both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are liable for the violations of the ADA.   As between those parties, allocation of responsibility for complying may be determined by lease or other contract 36 C.F.R. 201 (b).

## BACKGROUND

10.    More than 20 years ago Congress determined that disabled people, such as the Plaintiff, were being discriminated against.  Specifically Congress found, in part, the following:

> (a)  some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
> (b) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
> (c) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;
> (d) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability <u>have often had no legal recourse to redress such discrimination</u>;
> (e) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, <u>the discriminatory effects of architectural</u>, transportation, and communication <u>barriers</u>, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria,

    segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities; 42 U.S.C. 12101(a) (emphasis added).

11.    As a result of these findings the Congress passed the Americans with Disabilities Act (the "ADA"), 42 U.S.C. Sec. 12101 *et seq*. That act forms a basis for this action. The ADA was designed to do several things, specifically:

    (a) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
    (b) <u>to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;</u>
    (c) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
    (d) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. 12101(b) (emphasis added).

These laws have been in effect for more than 17 years. Any entity engaged in owning or operating a public accommodation should be well aware of the requirements. Congress provided that individual disabled citizens would be empowered to enforce this civil rights law. The effect of having millions of disabled individuals enforcing the requirements greatly increases the likelihood of compliance by the public accommodations. Ms. Greer does not control the Property, the Defendants do. Ms. Greer cannot control the fact that she is disabled. At anytime prior to the filing of this suit the Defendants could have come into compliance with the law and avoided this suit. They chose not to. <u>Ms. Greer is now exercising her right, granted by Congress, to require that the Defendants comply with the law.</u>

## FACTS

12.    Ms. Greer uses a wheelchair for mobility. Ms. Greer went to the Property

recently. When she arrived she noted that the accessible route from the parking and into PJ's was wrong. Further, many of the curb cuts impede the route through the facility. And despite being across the street from where the Campus is located, there is no accessible route to the sidewalk as well.

13. This is not a comprehensive list of problems at the Property. Once the Plaintiff is allowed formal discovery a complete list of the problems at the Property will be provided.

14. Collin County records indicate that the Shopping Center was built brand new from the ground up after January 1993, in fact it was built only about 10 years ago. As such it is new construction and must comply with the new construction guidelines under the ADA. Further, Texas law requires that all new construction of such a facility must be inspected for compliance within one year of completion. There are no Texas Department of Licensing and Regulation ("TDLR") records indicating that the property ever passed such an inspection. In fact, TDLR records indicate that two separate projects, including the PJ's Textbooks at the Property failed inspection for accessibility.

15. Upon each visit Ms. Greer will encounter some of the above listed architectural barriers at the Property. Despite those barriers she will continue to try to use the Property. The barriers located on the Property discriminate against her with regards to using the goods, services, facilities, privileges, advantages, and accommodations located on the Property.

16. As a result of the Defendants' conduct and in order to pursue this matter Plaintiff has retained an attorney with 20 years of experience, including having been appointed class counsel on several occasions to represent mobility impaired individuals of Texas.

Ms. Greer's counsel is very familiar with this type of litigation.  The Plaintiff has agreed to pay this attorney, whose name appears on this Compliant, a reasonable fee.  Pursuant to her statutory rights, Ms. Greer will seek to recover her fees and any costs in this litigation from the Defendants if she is the prevailing party in this case.

## CAUSES OF ACTION
## Count 1

### ADA - Failure to Accommodate, New Construction

17. The law requires that "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation*". 42 U.S.C. §12182(a) (italics added).

18. A facility means all *or any portion of buildings*, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located. 28 CFR part 36.104 Definitions (italics added).

19. The Property/shopping center is a facility and/or public accommodation under the law.

20. Discrimination includes "a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities". 28 CFR part 36.401 New Construction.

21. [A] facility is designed and constructed for first occupancy after January 26, 1993, only –

(i) If the last application for a building permit or permit extension for the facility is certified to be complete, by a State, County, or local government after January 26, 1992 (or, in those jurisdictions where the government does not certify completion of applications, if the last application for a building permit or permit extension for the facility is received by the State, County, or local government after January 26, 1992); and

(ii) If the first certificate of occupancy for the facility is issued after January 26, 1993.  28 CFR part 36.401

22. Collin County records indicate that the improvements on the Property were built approximately 10 years ago. Therefore, the last building permit was filed and the first certificate of occupancy for the Shopping Center was issued after January 26, 1993. Therefore, *under the statutory definition,* the Shopping Center is "new construction" under the ADA.

23. The guidelines for new construction are clearly set out in the Federal ADA Guidelines for Buildings and Facilities, 28 CFR Part 36, Appendix A, (the "ADAAG").

24. Defendants fail to comply with the ADAAG requirements at the Shopping Center because of the numerous architectural barriers that exist there. Many of those barriers are previously set out in the "Facts" section of this Complaint.

25. The Defendants discriminate against Ms. Greer because they have failed to design and construct facilities (the Center) for first occupancy later than 30 months after the date of enactment of the ADA that are readily accessible to and usable by individuals with disabilities. 42 USC 12183(a)(1).

26. As a direct and proximate result of the Defendants' denial of appropriate and dignified access into and use of the Center, the Defendants deprived Plaintiff of her civil

liberties and have thereby discriminated against her.

## Count 2
## ADA - Improper Alterations

27. In the alternative, some of the modifications and alterations that exist at the Property were installed after the ADA guidelines went into effect. As such the law requires that they have been built in compliance with the ADAAG standards. They were not.

> (a) General. (1) Any alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.
>
> (2) An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.
>
> (b) Alteration. For the purposes of this part, an alteration is a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof.
>
> 28 C.F.R. 36.402

28. Clearly, features designed to allow access into a Center "affects or could affect the usability of the building or facility or any part thereof." Curb cuts from parking spaces and accessible routes affect the usability of the Property. To the extent that the parking and access routes have been modified since the Center was constructed, those areas must comply as modifications. Those modifications do not comply with the law.

29. The Defendants discriminate against Plaintiff on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendants do not afford to Plaintiff or any other mobility impaired individual the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at

the Property as required by law because they have failed to ensure that the alterations made after January 26, 1992 are accessible to the maximum extent feasible.

30. As a direct and proximate result of the Defendants' denial of appropriate and dignified access into and use of the Center, the Defendants have deprived Plaintiff of her civil liberties and thereby discriminated against her.

### Count 3
### ADA - Failure to Accommodate When Removal was Readily Achievable

31. The law requires that "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation*". 42 U.S.C. §12182(a) (italics added).

32. A facility means all *or any portion of buildings*, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located. 28 CFR part 36.104 Definitions (italics added).

33. The problems at the Center, some of which are set out in paragraph 12 include paths of travel which are part of the facility.

34. The ADA places an ongoing obligation on all public accommodations to remove architectural barriers from existing facilities and public accommodations if that removal is readily achievable.

> Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include --
>
> (1) The nature and cost of the action needed under this part;

***PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL***

> (2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;

> 28 CFR part 36.104 Definitions

35. The Defendants, like the owners or operators of all public accommodations, have been under this obligation since this Center was built. Each year the Center has been open since first constructed and any of the Defendants were either the Landlord or the Tenant they could have removed some, one, or more of the barriers set out earlier in the "Facts" portion of this Complaint, or other barriers that exist at the Center.

36. The Justice Department has set out the priorities for barrier removal. Specifically the Justice Department has determined as follows:

> (c) Priorities. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

> (1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.

> 28 CFR part 36.304(c)

37. The barriers that exist at the Shopping Center include no accessible route from parking or the public sidewalks to the front door. <u>The Defendants have therefore failed to remove the barriers from the Shopping Center made the top priority under the law</u>, when removal of many, if not all, of the barriers was readily achievable.

38. The Defendants discriminate against Plaintiff on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or

accommodations at the Center in that, the Defendants own and or operate a public accommodation that does not afford to Plaintiff or any other mobility impaired individual the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Center required by law because the Defendants have failed to remove those barriers where the removal was readily achievable.

39. As a direct and proximate result of the Defendants' denial of appropriate and dignified access into and use of the Center, the Defendants deprive the Plaintiff of her civil liberties and have thereby discriminated against her.

### Count 4
### Tex. Hum. Res. Code – Discrimination

40. Tex. Hum. Res. Code § 121.003(a) provides that persons who are physically disabled have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

41. TEX GOV CODE §469.003 (Vernon 2003) defines one set of public facilities covered by the law, specifically, "a privately funded building or facility defined as a "public accommodation" by Section 301(7) of the Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, that is constructed or <u>renovated,</u> <u>modified,</u> <u>or</u> <u>altered</u> on or after January 1, 1992" (emphasis added). The Hospital is covered under this definition as previously set out in this Complaint.

42. The State of Texas, Texas Accessibility Standards (the "TAS") of the Architectural Barriers Act, Article 9102, Texas Civil Statutes, are similar to and closely track the ADAAG. The TAS clearly sets out certain requirements for public accommodations such as the Hospital with regards to design requirements.

43. Complying with the TAS is a requirement of Chapter 469 of the Government Code. Violation of TAS is therefore a violation of Chapter 469. A violation of Chapter 469 is a violation of §121.003(d)(1) of the Tex. Hum. Res. Code. because §121.003(d)(1) specifically states that a failure to comply with Article 9102, Texas Civil Statutes is a form of discrimination in Texas. Therefore violation of the TAS requirements is a violation of §121.003 of the Tex. Hum. Res. Code. Article 9102 was simply codified into Chapter 469 of the Government Code in 2003.

44. The architectural barriers previously set out in the "Facts" portion of this Complaint, regarding the path of travel are violations of the TAS requirements as well as the ADAAG. Further, the Texas law requires a review of the plans to construct when the construction is in excess of $50,000.00. That review must be submitted prior to construction. Further, the law requires that the facility be inspected for compliance with TAS within one year of construction completion. Plaintiff was unable to locate any records at TDLR to indicate any compliance with the inspection portion of these requirements. Further, there is evidence that PJ's Textbook failed inspection by TDLR.

45. Any public facility that violates the provisions of Section 121.003 is deemed to have deprived a person with a disability of his or her civil liberties. The person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction, and *there is a conclusive presumption of damages in the amount of no less than $100*. Tex. Hum. Res. Code § 121.004(b). (italics added.)

46. As a direct and proximate result of the Defendants' violation of Texas law and it's denial of appropriate and dignified access into and use of the Center, the Defendants deprived Ms. Greer her civil liberties. Ms. Greer suffered inconvenience and the indignity and stigma of discrimination as a result.

## *REQUEST FOR RELIEF*

Wherefore Plaintiff respectfully requests that the Court grant the following relief:

47. An order directing the Defendants to bring the Property into compliance with the new construction standards of the ADAAG and TAS.

48. In the alternative, an order directing the Defendants to bring the Property into compliance with the new construction standards of the ADAAG and TAS to the extent that it is readily achievable.

49. An order directing the Defendants to stop discriminating against Ms. Greer now and in the future and for a minimum of the $100.00 mandatory monetary damages under State law for each act of discrimination, the exact amount to be determined by the trier of fact.

50. An award to Plaintiff for her attorney's fees, including litigation expenses, and costs.

51. An award to Plaintiff of such other and further legal and equitable relief as the Court deems just and proper.

Respectfully submitted March, 16, 2011 by,

/s/ Palmer D. Bailey

**Mr. Palmer D. Bailey**
**Attorney-in-charge**
Bar Card No. 01533400
Law Office of Palmer Bailey, *A Professional Corporation*
16633 Dallas Parkway, Ste. 600
Addison, TX 75001
Tel. 972.588.1863
Fax. 972.588.1801
Inlight226@aol.com

**Attorney for Plaintiff**

*Plaintiff Demands a Trial by Jury*